UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

October 16, 2023

LETTER TO ALL COUNSEL OF RECORD

Re: *Timothy H. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 22-2841-BAH

Dear Counsel:

On November 3, 2022, Plaintiff Timothy H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 10), the parties' briefs (ECFs 13 and 16), and Plaintiff's reply (ECF 17). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on May 18, 2021, alleging a disability onset of February 10, 2010.[1] Tr. 608–17. Plaintiff's claim was denied initially and on reconsideration. Tr. 435–39, 443–45. On June 10, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 203–47. Following the hearing, on July 8, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 135–63. The Appeals Council denied Plaintiff's request for review, Tr. 1–7, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.  THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[1] Although Plaintiff's application notes the onset of disability as February 10, 2010, the Administrative Law Judge's ("ALJ") July 8, 2022 decision notes the onset of disability as January 16, 2019. Tr. 138.

[2] 42 U.S.C. §§ 301 et seq.

continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 10, 2021, the application date."  Tr. 141.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "bipolar disorder; panic disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and cardiac dysrhythmia."  *Id*.  The ALJ also determined that Plaintiff suffered from the non-severe impairments of "substance abuse," "chronic obstructive pulmonary disease (COPD)," "gastritis," "hyperlipidemia," and "lumbago with left-sided sciatica."[3]  *Id*.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 142.  Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 416.967(c) except he is able to understand, remember and carry out short, simple instructions, perform simple tasks, and make simple work[] related decisions; he needs a stable work setting with infrequent changes which are introduced slowly; he should perform no work involving fast-paced production standards such as assembly line work or hourly quotas; and he can have no public contact and occasional contact with co-workers and supervisors.

Tr. 144.  The ALJ determined that Plaintiff had no past relevant work but could perform other jobs that existed in significant numbers in the national economy, including the job of hand packager (DOT[4] #920.587-018), ticket printer/tagger (DOT #652.685-094), and bagger[5] (DOT #920.687-

---

[3] Relevant to this case, the ALJ also determined that Plaintiff had a "moderate limitation" in "concentrating, persisting, or maintaining pace[.]"  Tr. 142.

[4] The "DOT" is shorthand for the Dictionary of Occupational Titles.  The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

[5] The ALJ and the vocational expert correctly noted that the job of bagger is considered light work

018). Tr. 155–56. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 156.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff contends that the RFC was not supported by substantial evidence. ECF 13, at 8. Specifically, Plaintiff avers that the ALJ erred by failing to explain how a prohibition against assembly-line work and hourly quotas in the RFC accommodates Plaintiff's moderate limitations in maintaining concentration, persistence, and pace ("CPP"). *Id.* at 8–12. Second, Plaintiff avers that the ALJ's step-five analysis was not supported by substantial evidence because the RFC's limitation to "short, simple instructions" conflicts with the ALJ's step-five determination that Plaintiff could perform jobs that require a General Educational Development ("GED") Reasoning Level of 2.[6] *Id.* at 13–20. Defendant counters that: (1) the ALJ properly evaluated the evidence in assessing Plaintiff's mental RFC; and (2) the ALJ reasonably relied on the vocational expert's testimony at step five. ECF 16, at 6–12. For the reasons that follow, the Court determines that Plaintiff's arguments in favor of remand are unavailing.

---

with a specific vocational preparation rating of 1. *See* Tr. 156, 242; *see* 920.687-018 BAGGER, 1991 WL 687965 (1991). However, the vocational expert and the ALJ both referenced an incorrect DOT number (#520.687-018, which pertains to the job of candy molder) when discussing the job of bagger. *See* Tr. 156, 242. As explained in greater detail below, the Court infers that the ALJ's discussion and the vocational expert's testimony pertain to the job of bagger, rather than to the job of candy molder.

[6] GED Reasoning Level 2 jobs require a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, App. C, 1991 WL 688702 (1991). GED Reasoning Level 1 jobs require a claimant to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." *Id.*

*Timothy H. v. Kijakazi*
Civil No. 22-2841-BAH
October 16, 2023
Page 4

      A.      <u>The RFC was Supported by Substantial Evidence.</u>

Plaintiff's first argument concerns the ALJ's determination at step two that Plaintiff suffered from moderate limitations in CPP. ECF 13, at 10 (citing Tr. 143). Specifically, Plaintiff argues that the ALJ failed to explain why the RFC's prohibition against "fast-paced production standards such as assembly line work or hourly quotas" was sufficient to accommodate Plaintiff's CPP limitations. *Id*. at 11. This argument is unavailing. The Court has previously recognized that similar production-rate RFC restrictions adequately account for a claimant's moderate CPP limitations. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin*., No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address moderate CPP limitations); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations). Moreover, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 1:15CV515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

Indeed, a careful review of the ALJ's decision reveals that the ALJ provided substantial evidence for the RFC provision which restricts Plaintiff from assembly-line work and hourly quotas. Specifically, the ALJ noted that while Plaintiff had recently been described by treating physicians as "having intact attention and concentration," he had also, "at times, appeared distractible." Tr. 143. The ALJ further noted that "[s]ome concentration problems were observed" by Plaintiff's treating sources because Plaintiff "was often off-topic[.]" Tr. 146. Nonetheless, the ALJ also cited evidence which suggested that Plaintiff's concentration and attention "could be easily redirected." *Id*. Given this analysis, the ALJ's decision provides the requisite "logical bridge" connecting the evidence of Plaintiff's concentration issues to the RFC provision restricting Plaintiff from hourly quotas and assembly-line work. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Additionally, Plaintiff fails to explain how a more detailed explanation of the mental RFC (or the inclusion of a different RFC provision directed at Plaintiff's CPP limitations) might change the outcome of this case. Rather, Plaintiff simply argues that the ALJ's lack of explanation precludes judicial review. ECF 13, at 12. But, as noted above, the ALJ adequately discussed Plaintiff's CPP limitations and provided substantial evidence to support the conclusions relevant to those limitations. Thus, because Plaintiff does not argue that he cannot perform "even non-production-type work" because of his CPP difficulties, *see Grant*, 2016 WL 4007606, at *9, I find that the RFC was supported by substantial evidence.

      B.      <u>The ALJ Did Not Commit Harmful Error at Step Five.</u>

Having determined that the RFC provision concerning assembly-line work and hourly

*Timothy H. v. Kijakazi*
Civil No. 22-2841-BAH
October 16, 2023
Page 5

quotas adequately accommodated Plaintiff's CPP difficulties, the Court next considers whether the ALJ erred at step five. Plaintiff contends that the ALJ committed reversible error at step five by failing to resolve a conflict between: (1) the RFC provision limiting Plaintiff to work involving "short, simple instructions" and (2) the ALJ's determination (based on the vocational expert's testimony) that Plaintiff could perform jobs requiring a Reasoning Level of 2. ECF 13, at 17–18.

In *Thomas v. Berryhill*, the Fourth Circuit held that a claimant who is "limited to short, simple instructions[] may not be able to carry out detailed but uninvolved instructions" as required to perform work at Reasoning Level 2. 916 F.3d 307, 314 (4th Cir. 2019); *accord Grier v. Berryhill*, No. 1:18-1605-JMC-SVH, 2019 WL 2061588, at *14 (D.S.C. Mar. 13, 2019), *report and recommendation adopted sub nom. Grier v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-01605-JMC, 2019 WL 1723601 (D.S.C. Apr. 18, 2019) (finding that limitations to the performance of "simple routine tasks," "understand[ing], remember[ing] and follow[ing] simple instructions," "mak[ing] simple work-related decisions," and "tolerat[ing] routine changes in [the] work setting" limited a claimant to jobs with "a GED reasoning level of one[.]").

Here, the ALJ determined that Plaintiff can "understand, remember and carry out short, simple instructions, perform simple tasks, and make simple work[] related decisions[.]" Tr. 144. Then, at step five, the ALJ determined that Plaintiff could perform the jobs of hand packager, ticket printer/tagger, and bagger. Tr. 155–56. But, despite Plaintiff's contention to the contrary, only two of these jobs (hand packager and ticket printer/tagger) require a Reasoning Level of 2. *See* 920.587-018 PACKAGER, HAND, 1991 WL 687916 (1991); 652.685-094 TICKET PRINTER AND TAGGER, 1991 WL 685764 (1991). The job of bagger, unlike the other two jobs listed by the ALJ at step five, requires only a Reasoning Level of 1. *See* 920.687-018 BAGGER, 1991 WL 687965 (1991). Plaintiff does not argue that the RFC assessed in this case is incompatible with jobs requiring a Reasoning Level of 1. *See generally* ECF 13. Accordingly, the ALJ identified at least one job at step five (bagger) which exists in significant numbers in the national economy and whose Reasoning Level is not alleged to conflict with Plaintiff's RFC. Because the ALJ did so, any error concerning other jobs referenced at step five was harmless. *See Leggett v. Comm'r, Soc. Sec. Admin.*, No. SAG-12-1405, 2013 WL 1352298, at *3 (D. Md. Apr. 2, 2013) (determining that an ALJ's potential step-five error related to certain jobs was harmless because no such error existed as to at least one other job identified by the vocational expert).

As a final matter, the Court acknowledges that both the vocational expert and the ALJ referenced an incorrect DOT number (#520.687-018) when discussing the job of bagger. *See* Tr. 156, 242. Plaintiff's brief repeats this error. ECF 13, at 17. However, Plaintiff does not argue that the error affected the outcome of the case. Moreover, based on the SVP level referenced by the ALJ and the vocational expert with respect to the job of bagger, *see* Tr. 156, 242, as well as the vocational expert's explanation that a bagger is "somebody who bags garments and other articles," Tr. 242, the Court easily infers that the vocational expert and the ALJ intended to refer to the job of bagger (rather than the job of "candy molder" listed at DOT #520.687-018 and requiring a Reasoning Level of 2). Accordingly, the Court determines that any error in this regard was harmless. *See, e.g.*, *Star v. Colvin*, No. 12-cv-201-FHM, 2013 WL 1788581, at *2 (N.D. Okla. Apr. 26, 2013) ("Plaintiff has failed to demonstrate how citing to the wrong DOT number but

naming the proper job title affected the outcome of this case. Th[is] misstatement . . . does not constitute reversible error."); *Kevin L.W. v. Saul*, No. 18-CV-481-JED-JFJ, 2020 WL 6445091, at *2 (N.D. Okla. Nov. 3, 2020) (holding that a "one-digit mistake" in a DOT citation did not impact an ALJ's decision "because the ALJ correctly identified the position as sedentary and properly reproduced the vocational expert's testimony regarding the number of jobs for that position.").

In sum, the ALJ adequately supported the RFC with substantial evidence, and any error committed by the ALJ at step five was harmless. I therefore find remand to be unwarranted.

## V. CONCLUSION

For the reasons set forth herein, the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States District Judge